IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAMEN L. TOY (N94265), | ) |
| Plaintiff, | ) ) ) |
| | ) No. 17 C 4357 |
| v. | ) ) The Honorable Joan H. Lefkow |
| CATHY BECKWAY, *et al.*, | ) ) |
| Defendants. | ) |

**OPINION AND ORDER**

Damen L. Toy, an Illinois state prisoner, brought this *pro se* civil rights complaint in connection with an incident that occurred on August 9, 2016, while he was imprisoned at Stateville Correctional Center. Toy's amended complaint, which was submitted by counsel,[1] raises the following claims: an Eighth Amendment claim against Cathy Beckway (Count I); First Amendment retaliation claims against Beckway (Count II), Joel S. Starkey (Count III), Charles Best (Count V), and Phyllis Baker (Count VII); Fourteenth Amendment due process claims against Starkey (Count IV), Best (Count VI), and Baker (Count VIII); a First Amendment claim for failure to intervene against Randy Pfister (Count IX); and a claim for injunctive relief against Baldwin and Pfister (Count X).[2]

For the reasons stated below, summary judgment is denied on Toy's First and Eighth Amendment claims against Beckway. The motion is granted on all other claims as to all defendants. Since Toy is no longer housed at Stateville and there is no suggestion that he is likely to be transferred there in the future, the claim for injunctive relief in Count X is moot. *See*

---

[1] Gary L. Garner was recruited to represent Toy and was granted leave to withdraw after Toy expressed his decision to represent himself. (*See* dkts. 35, 38.)

[2] The court's jurisdiction rests on 28 U.S.C. § 1343. Venue is proper in this district.

*Higgason* v. *Farley*, 83 F.3d 807, 811 (7th Cir. 1996). Defendants did not address the failure-to-intervene claim, so it remains in the case.

## MATERIAL FACTS[3]

Damen L. Toy is an inmate in custody of the Illinois Department of Corrections, currently housed at Menard Correctional Center. At the time of the events at issue, Toy was incarcerated at Stateville Correctional Center. Cathy Beckway was a paralegal assistant at Stateville's law library. Joel S. Starkey was the internal security investigator. Charles Best, a correctional lieutenant, served as the Adjustment Committee chair. Phyllis Baker was the librarian. Randy Pfister was the Warden. John Baldwin was the Director of the Illinois Department of Corrections.

On August 9, 2016,[4] Toy was working as an inmate legal clerk in the law library. Shortly before noon, Toy and Beckway engaged in conversation, which developed into physical contact between them. According to Toy, Beckway pulled him towards her and grabbed his penis without consent. According to Beckway, Toy grabbed her by the arm and pulled her towards himself.

Toy left the area and wrote an inmate grievance reporting Beckway's conduct. Beckway went to see her supervisor, Baker.[5] While she was in Baker's office, Toy came and asked to

---

[3] The facts in this section are taken from the parties' Local Rule 56.1 statements and supporting documents and are construed in the light most favorable to Toy. The court will address many, but not all, of the factual allegations in the parties' submissions as the court is "not bound to discuss in detail every single factual allegation put forth at the summary judgment stage." *Omnicare, Inc.* v. *UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) (citation omitted). In accordance with its regular practice, the court has considered the parties' objections to the statements of fact and includes in this background only those portions of the statements and responses that are appropriately supported and relevant to the resolution of this motion. Any facts that are not controverted as required by Local Rule 56.1 are deemed admitted.

[4] All events occurred during 2016; the year will not be repeated.

[5] Beckway testified that, before she went to see Baker, Toy handed her the grievance and asked her to read it. (Dkt. 161-5 at 68). Toy testified that he did not recall whether he showed it to Beckway and denied that he spoke to her before seeing Baker. (Dkt. 161-4 at 48:1–13).

speak with Baker. Baker left her office with Toy and read the grievance. She said she would have to show it to her supervisor; Toy indicated he didn't mind.

Baker took the grievance to her supervisor, Ms. Costabile, who told Baker to bring Beckway to her office. While there, Beckway (who had started the job but three weeks before) learned that inmates are not allowed to touch staff. Doing so is considered assault. Learning this, Beckway wrote incident and disciplinary reports before she left work for the day.[6] Meanwhile, Toy was taken to the Internal Affairs Office. He was put in investigative status, which meant he was removed from the general population pending investigation.[7]

On the same day, Starkey interviewed Toy. Starkey's responsibilities included investigating incident reports and disciplinary reports, which could include submitting requests for prosecutorial review by the Will County State's Attorney. According to Toy, after he explained the incident to Starkey, Starkey became verbally abusive, used racial slurs, and asked him to submit to a polygraph examination. When Toy refused, Starkey continued hurling racial slurs. Toy states that the interview "abruptly ended."[8]

On August 16, Toy wrote to Pfister requesting that Pfister contact the Will County State's Attorney and the Illinois State Police to initiate criminal charges against Beckway. After receiving Toy's accusation against Beckway, Pfister ordered an investigation pursuant to the Prison Rape Elimination Act (PREA). The Office of Internal Affairs issued a report dated

---

[6] The parties do not explain the difference between an incident report and a disciplinary report, but it is undisputed that both reported the same facts.

[7] Toy asserts that he was placed under investigation based on the allegations contained in his written grievance. (PSOF ¶ 17.) This is not borne out by any document or other evidence.

[8] According to Starkey, Toy became belligerent when asked about inconsistencies in his statements, and Starkey removed him from his office, ending the interview. (Dkt. 161-10; 161-6 at 24:2–8). Toy denies that he was belligerent; rather, he objected to the way Starkey was talking to him. (Dkt.161-4 at 63:1–17). Toy does not deny that he declined or refused to answer questions.

3

August 24 of its investigation of Toy's claim of sexual assault, finding the allegations unfounded due to lack of corroborating evidence.

Starkey authored a report of his investigation, dated August 30, detailing the sources of information and the facts found. He issued Toy a disciplinary "ticket" for assault on a person and impeding an investigation. Starkey testified at his deposition to his opinion that neither Toy nor Beckway had committed an aggravated battery that should be referred for prosecutorial review.

On September 2, Toy received written notice that he was being charged with two rule violations: assaulting any person in violation of DR 504.102 and impeding an investigation in violation of DR 504.110. As was his right under the notice, Toy asked for a hearing and named Baker, Beckway, and Carlitta Powell, another paralegal in the law library, as witnesses. On September 6, Toy went before the Adjustment Committee for a disciplinary hearing on both charges. Best, as Adjustment Committee chair, was responsible for hearing inmate rule violations and recommending discipline for substantiated charges. A counselor, Cynthia Harris, was also present as a member of the committee.[9] Toy denied both charges and stated that the charge of assault was issued in retaliation for his writing a grievance and seeking to file a criminal complaint against Beckway. He also denied that he had obstructed the investigation.

After Toy gave his statement, he was excused and Best and Harris considered whether more information was needed.[10] Best spoke to Baker and Starkey after the hearing.

The Adjustment Committee found Toy guilty of both charges. Best testified that he relied on what Starkey told him in finding Toy guilty of impeding the investigation. He also relied on Baker's statement to an investigator for the Adjustment Committee in making his determination

---

[9] Toy states that a mental health counselor, Ms. Hart, was also present.

[10] This statement was not submitted by either party. (*See* dkt. 161-9 at 15:11–15).

4

of guilty of the assault. In a written decision, Best stated that Beckway's testimony was irrelevant because she wrote the incident report and that Powell had stated that she did not witness the incident. In the course of making his determination after the hearing, Best was not aware that Toy sought to have criminal charges filed against Beckway. The Committee's Final Summary Report stated the basis for decision as follows:

> R/I reflects based on multiple staff reports and staff interviews it has been determined that on 8/9/2016 Inmate Toy N94265 was in the office of Paralegal C. Beckway when he grabbed paralegal Beckway's left wrist with his right hand and pulled her towards him. During the assault and just prior to it. [*sic*] Inmate Toy N94265 attempted to engage Beckway in an inappropriate conversation regarding inmates being lonely and not having a woman. R/I reflects Immediately following this assault Toy N94265 authored a grievance where he alleges that Beckway made sexual advances towards him. On 8/16/16 Toy N94265 authored a letter to the Warden claiming that she assaulted him by forcibly grabbing his penis. R/I reflects inmate Toy N94265 impeded the investigation by refusing to provide information relevant to the assault Investigation. … The committee is satisfied that Inmate Toy N94265 did in fact violate the charges cited.

Best recommended discipline of one year in C grade, one year of segregation, transfer to Pontiac, one year of commissary restriction, and six months of contact-visit restriction. The discipline was approved by Pfister, and Toy was transferred immediately to Pontiac Correctional Center.

While imprisoned at Pontiac, Toy was held in segregation for 11 months. He was subjected to harsh conditions such as constant noise, total darkness in his cell, and lack of any outdoor time, which caused hearing and vision loss.

Toy appealed to the Administrative Review Board of the Department of Corrections and was denied relief. He continued to file grievances and appeals to no avail.

## **LEGAL STANDARD**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Lord* v. *Beahm*, 952 F.3d 902, 903 (7th Cir. 2020) (quoting *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering whether "a fact cannot be or is genuinely disputed," the court may consider, among other materials, depositions, affidavits, declarations, stipulations, admissions, and interrogatory answers. Fed. R. Civ. P. 56(c)(1)(A). The court views all facts and draws all reasonable inferences in the light most favorable to the nonmovant. *Parker* v. *Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017). The court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts[.]" *Reinebold* v. *Bruce*, 18 F.4th 922, 927 (7th Cir. 2021) (quoting *Payne* v. *Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)).

## ANALYSIS

I. **Eighth Amendment Cruel and Unusual Punishment Claim (Count I)**

Toy claims that Beckway touched a private part of his body, which may amount to cruel and unusual punishment under the Eighth Amendment. *See Washington* v. *Hively*, 695 F.3d 641, 643 (7th Cir. 2012) (holding that inmate stated claim under Eighth Amendment because "unwanted touching of a person's private parts, intended to humiliate the victim or gratify the assailant's sexual desires, can violate a prisoner's constitutional rights whether or not the force exerted by the assailant is significant").

The parties agree that there was physical contact between Beckway and Toy, but who initiated it and where the touching occurred are disputed. These are disputes of material issues of fact that preclude summary judgment. Beckway attempts to distinguish *Washington* on the grounds that she lacked a sexual motive immediately before the incident. Beckway's "intent," however, "is a mental state … [that], unless admitted, has to be inferred rather than observed[.]"

6

*Washington*, 695 F.3d at 643. Furthermore, the argument that Toy was not powerless in the situation, unlike the plaintiff in *Washington*, does not detract from the principle that an unwanted touching of a person's private parts with an improper motive can violate a prisoner's constitutional rights. As such, summary judgment must be denied on this claim.

**II.     First Amendment Retaliation Claims (Counts II, III, V, and VII)**

Toy claims that Beckway, Starkey, Baker, and Best retaliated against him by placing him in segregation contrary to prison rules and otherwise subjected him to undeserved discipline, in violation of the First Amendment's prohibition against retaliation for exercise of protected speech. Defendants argue that the undisputed facts defeat this claim.

"An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt* v. *Carter*, 224 F.3d 607, 618 (7th Cir. 2000), *abrogated on other grounds by Savory* v. *Cannon*, 947 F.3d 409, 423 (7th Cir. 2020) (*en banc*). To prevail on a First Amendment retaliation claim, a prisoner must establish that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." *Bridges* v. *Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (cleaned up).

Defendants do not contest the first two elements of proof. They contend, however, that there is no disputed issue of fact that (1) Toy was not disciplined due to Beckway's incident report; (2) neither Beckway nor Starkey had a retaliatory motive; and (3) neither Baker nor Best was personally involved in the alleged discipline.

The claim against Beckway is intertwined with the cruel and unusual punishment claim. If a jury were to believe Toy's version of the incident, it could conclude that Beckway falsely

7

wrote the incident and disciplinary reports against him. According to Beckway, Toy showed her his grievance before she went to Baker's office (although Toy didn't recall doing so). If this indeed occurred, a jury could reasonably find that she was retaliating.

As for Baker, Starkey, and Best, there is no evidence that any of them had any knowledge that Beckway's reports of the incident were untrue, which would be necessary for a claim of retaliation. Toy's retaliation claims against these defendants rest on his view, contrary to all documentary evidence and testimony of all other witnesses, that he was disciplined for filing a grievance against Beckway, as well as reporting to Pfister and seeking the assistance of the State's Attorney. Essentially, his proof is that he wrote the grievance and was disciplined afterwards. But timing alone is insufficient to create an issue of fact for trial. *See Stone* v. *City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). Rather, Toy must point to other facts that suggest a relationship between the protected activity and the alleged retaliatory act. *Sauzek* v. *Exxon Coal USA Inc.*, 202 F.3d 913, 918 (7th Cir. 2000).

Toy asserts that Harris told him that she believed he was not guilty of the charges, but he has no document or other evidence, such as Harris's affidavit, that she made such a statement, and her name appears as a signatory on the Adjustment Committee's decision.[11] Toy's belief alone that his grievance set the events in motion that resulted in his discipline fails to suggest that the investigation and disciplinary hearing were a sham covering a retaliatory motive. For these reasons, the claim against Beckway withstands summary judgment. Starkey, Baker, and Best, however, are entitled to judgment as a matter of law.

---

[11] The document does not reflect an actual signature, but both Best and Harris are listed under "signature" with the date and their race noted. (*See* dkt. 161-11.)

### III. Fourteenth Amendment Due Process Claims (Counts IV, VI, and VIII)

Toy claims that he was deprived of his liberty interest by being held for eleven months in segregation, where he was subjected to constant noise and extended periods of total darkness and not allowed to go outdoors.[12] He also claims he was convicted of the disciplinary violations without due process. Defendants contend that Toy's discipline does not implicate a protected right that triggers due process and, even if it did, Toy was afforded all process due.

A prisoner challenging the process he was afforded in a prison disciplinary proceeding must meet two requirements: (1) he has a liberty or property interest with which the state has interfered; and (2) the procedures he was afforded upon that deprivation were constitutionally deficient. *Scruggs* v. *Jordan*, 485 F.3d 934, 939 (7th Cir. 2007).

By virtue of his incarceration, a prisoner has protected liberty interests only to be free from restraint that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). There is no constitutional right to remain in the general population but, for a prisoner sent to segregation, "both the duration and the conditions of the segregation must be considered in determining whether due process is implicated." *Isby* v. *Brown*, 856 F.3d 508, 524 (7th Cir. 2017) (cleaned up). To determine whether a prisoner endured such a hardship, the court must look to "the combined import of the duration of the segregative confinement and the conditions endured."

---

[12] Toy also seems to argue that he was placed in investigative status longer than permitted under prison rules. Investigative status is limited to 30 days unless extended because of emergency. Ill. Admin. Code § 504.50(c)(3), (7). Toy was placed in investigative status on August 9 and transferred to Pontiac on September 21. This violation does not, however, implicate a liberty interest. *See Thomas* v. *Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (citing *Sandin* v. *Connor,* 515 U.S. 474, 486 (1995)) ("Both temporary confinement and investigative status have been determined to be discretionary segregation, and do not implicate a liberty interest.").

*Hardaway* v. *Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (quoting *Marion* v. *Columbia Corr. Inst.*, 559 F.3d 693, 697–98 (7th Cir. 2009)) (emphasis omitted).

Defendants rely on *Thomas* v. *Ramos*, 130 F.3d 754 (7th Cir. 1997), to support their argument that the punishment imposed on Toy was not an "atypical and significant hardship." They do not proffer evidence, however, that Toy's conditions in confinement were typical, and *Thomas* may be distinguishable. In *Thomas*, the plaintiff was held in segregation approximately 70 days, and the court relied on cases where segregation lasted 30 days or fewer. *Id.* at 761–62. In *Williams* v. *Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995), which defendants also cite, segregation lasted 19 days. In contrast, Toy describes conditions such as constant noise, total darkness in his cell, and lack of any outdoor time for eleven months.[13] Considering the duration of confinement and the conditions Toy has testified to, the court concludes that Toy's liberty interest was implicated.

The next issue is whether the procedures followed during the Adjustment Committee hearing were constitutionally deficient. At the threshold, Baker and Starkey are entitled to summary judgment on this claim because they were not personally involved in the alleged deprivation of due process. This leaves only Best, who was chair of the Adjustment Committee.

The procedural protections outlined in *Wolff* v. *McDonnell*, 418 U.S. 539 (1974), include three key components: "(1) advance written notice of the disciplinary charges; (2) an opportunity … to call witnesses and present documentary evidence in [the prisoner's] defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Love* v. *Vanihel*, 73 F.4th 439, 451 (7th Cir. 2023) (quoting *Wolff*, 418 U.S. at 563–67);

---

[13] Although not directly relevant, the maximum penalty for assault is three months of segregation. The maximum penalty for impeding an investigation is three months in segregation. 20 IL ADC 504 Tbl. A. These penalties suggest that one year of segregation for these offenses is atypical and a significant hardship.

*Superintendent* v. *Hill*, 472 U.S. 445, 454–55 (1985). Prison officials have discretion whether to call witnesses. *See Wolff*, 418 U.S. at 566 ("Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority[.]") "While [the] evidence must bear some indicia of reliability, once the meager threshold has been crossed our inquiry ends and [courts] will not reverse the disciplinary board's decision." *Scruggs*, 485 F.3d at 941. "There must be enough support in the record for the officials' decision, however, so that a court can review for abuse of discretion." *Chavis* v. *Rowe*, 643 F.2d 1281, 1286 (7th Cir. 1981).

Certainly, Toy was given advance written notice of the disciplinary charges, and he was notified that he could identify witnesses. He identified Baker, Beckway, and Powell. Best stated that he did not call Beckway because her testimony was irrelevant (meaning, presumably, that her incident report sufficed). He did consider Baker's statement of what occurred. Powell had stated that she did not witness the incident with Beckway. As such, the Committee appears to have considered each of these witnesses' statements. Although it is not apparent that Toy ever saw the statements so as to be able to contradict them, there seems to be no law requiring that opportunity. *See Wolff*, 418 U.S. at 567 (confrontation and cross-examination are generally not required in this context).

Finally, the requirement that there be a written statement by the factfinder of the decision that includes the evidence relied upon and the basis for the decision is met here. The Final Report summarizes the basis of the assault charge and Toy's response. It is murkier with respect to the charge of impeding the investigation, but it states that Toy refused to answer the investigator's questions, and Starkey's report in the record recites his view of what occurred. This court has read and reviewed all the depositions and documents submitted into evidence and finds the

evidence sufficient for the court to confirm on this motion that there was some reliable evidence supporting the Committee's findings. The court concludes, therefore, that no reasonable jury could find that the Adjustment Committee's decision was not supported by substantial evidence. For these reasons, summary judgment is granted to Best, Baker, and Starkey on the due process claims.

## CONCLUSION & ORDER

Defendant Beckway's motion for summary judgment [161] on Toy's claims of cruel and unusual punishment and retaliation is denied. Because defendant Pfister does not move for summary judgment on Count IX, the failure-to-intervene claim proceeds. The motion is granted as to all other defendants and all other claims. This case will be called for a status hearing on September 11, 2024 at 9:45 a.m. Defense counsel shall arrange for plaintiff to appear by telephone.

Date: August 6, 2024

U.S. District Judge Joan H. Lefkow